[No. 12936.   Department Two.   November 10, 1915.]

JOHN BACHMAN *et al.*, *Appellants*, v. OREGON-WASHINGTON RAILROAD & NAVIGATION COMPANY, *Respondent*.[1]

RAILROADS—SALE OF ROAD—LIABILITY OF PURCHASER—TORTS.   A railroad company purchasing a right of way and roadbed, is not liable for damages committed by its predecessor in interest or the contractor who built the roadbed, occasioned by diverting the flow of a stream, when bluffs were blown off into the natural channel during the course of the construction of the road.

SAME—SALE OF ROAD—LIABILITY OF PURCHASER—STATUTES.   In such a case, Rem. & Bal. Code, § 8737, requiring railroads to restore streams crossed or touched to their former state and pay any damages caused by the construction of the road has no application, where it is not claimed that the roadbed was maintained in the course or channel of the river or encroached upon or interfered with the original channel.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered November 19, 1914, upon

[1]Reported in 152 Pac. 700.

findings in favor of the defendant, in an action in tort, tried
to the court.    Affirmed.

*Carl G. Benson* and *Garland & McLane,* for appellants.

*Bogle, Graves, Merritt & Bogle,* for respondent.

Holcomb, J.—After the trial of this action in the su-
perior court to the court without a jury, the trial judge
filed a memorandum decision, showing the theory upon which
the case was tried, viewed and decided by the trial court, and
stating the issues between the parties so succinctly that it is
here set forth:

"On *May 22, 1911,* John Backman signed and swore to
the complaint in this cause which was signed by Messrs.
Buck, Benson & McLane, as attorneys for the plaintiffs.    On
*April 10, 1914,* (nearly 3 years after verification by John
Backman of the complaint) the complaint and a summons
attached, were filed in the clerk's office.

"On *January 5, 1912,* there was filed in this cause, the
answer, sworn to on *January 2, 1912,* which was served on
Messrs. Buck, Benson & McLane, attorneys for plaintiff, on
*January 3, 1912,* as shown by their signed written admis-
sion of service on the answer as of that date.

"The case was tried to the court without a jury on *April
10, 1914.*

"*There is nothing whatever in this entire record to show
that the summons or complaint or both were ever served upon
any one.*

"In the summons and complaint the defendant is desig-
nated, '*Oregon and Washington Railroad and Navigation
Company, a corporation*'—while in the answer, as to the
*title* of the cause, the defendant is designated '*Oregon-Wash-
ington Railroad & Navigation Company,* a corporation' and
in the body of the answer prior to paragraph one as to al-
legations of facts the answering defendant, by way of iden-
tifying itself to the plaintiffs and giving them notice of its
true name states:

"Now comes the *Oregon-Washington Railroad & Naviga-
tion Company,* a corporation, defendant herein, mis-named
in the complaint herein *Oregon and Washington Railroad*

*and Navigation Company,* and for its answer to the complaint herein admits, denies and alleges as follows:

"Paragraph one of the complaint alleges that plaintiffs are the owners of the real estate involved and contains a description of it. This is admitted by paragraph one of the answer.

"Paragraph two of the complaint is as follows: 'That the Oregon and Washington Railroad and Navigation Company is a corporation organized and existing under and by virtue of the laws of the state of Oregon and have complied with the laws of the state of Washington governing foreign corporations.' This is admitted by paragraph two of the answer except it alleges that its corporate name is 'Oregon-Washington Railroad & Navigation Company' instead of 'Oregon and Washington Railroad and Navigation Company.'

"Paragraph three of the complaint alleges: 'That during the year 1909 the said defendant, its contractors and agents built and constructed a steam railroad in the southwestern part of Thurston county, in the state of Washington, and ever since that time has, and now is conducting and maintaining the same.'

"Paragraph three of the answer 'admits that this defendant is now conducting, operating and maintaining a steam railroad in the southwestern part of Thurston county, in the state of Washington, but denies each and every other allegation, matter, statement and thing contained in paragraph 3 of the complaint.'

"The effect of this answer is that, since the date of the complaint (May 22, 1911) and at present time, the answering defendant has been, and is, operating the steam railroad, and it is equally clear that it denies ever having built or constructed the steam railroad, directly or indirectly.

"Paragraphs 4, 5 and 6 of the complaint are as follows:

(4) " 'That the said defendant and its contractors and agents, in building and constructing its said road along the southern bank of the Chehalis river opposite and below plaintiff's land at two different points between the plaintiffs' land and the point of junction of the defendant's road with that of the Chicago, Milwaukee and Puget Sound Railroad Company, said junction being two miles down the river from the plaintiffs' land, blew two high bluffs into the river, completely

filling the bed of the said river with rocks and other debris, causing the water of the said river, at every stage of high water, which is very frequent, to leave its natural and accustomed channel and direct it over and across the plaintiffs' land.

(5) " 'That on divers occasions since the building and constructing of said road by the defendant, its contractors and agents, and solely by reason of their said filling of the said river bed, by their said blowing said bluffs into same, and in consequence thereof, the waters have overflowed the plaintiffs' lands, washing away the soil, uncovering gravel thereon and causing great holes to be dug and causing great drifts of gravel, sand, driftwood and other debris to accumulate and to be deposited thereon, and carrying away and destroying the plaintiffs' fences and crops consisting of potatoes and vegetables and carrying away and destroying three bridges, the property of the plaintiffs.

(6) " 'That as a result of said overflow of the plaintiffs' land and in consequence thereof, five acres of first bottom land, the property of the plaintiffs, have been completely washed away and rendered totally worthless to the damage of the plaintiffs in the sum of fifteen hundred ($1,500) dollars; that eighty acres of first bottom land, the property of the plaintiffs, have been damaged by holes being dug and soil carried away and gravel, sand and other debris being deposited thereon, in the sum of four thousand dollars ($4,000), that three bridges of the plaintiffs have been destroyed to the damage of the plaintiffs in the sum of three hundred ($300) dollars and that the plaintiffs' crops consisting of potatoes and other vegetables were destroyed to the damage of the plaintiffs in the sum of two hundred ($200) dollars; that the plaintiffs' land has been covered with driftwood to the damage of the plaintiffs in the sum of fifteen hundred ($1,500) dollars.'

"And paragraph 4 of the answer alleges: 'It denies each and every allegation, matter, statement and thing contained in paragraphs 4, 5 and 6 of said complaint.'

"The trial of the case disclosed that about all the defendant cared for in its general denial of paragraphs 4, 5 and 6 of the complaint was to deny that *this defendant* did the things complained of and certainly it does squarely deny it, and there is not a particle of proof here that this defendant

had anything whatever to do with the construction of the road except that two years after it was built defendant was found in possession of it, the effect of which is clearly overcome by defendant's proof by its articles of incorporation that it never had any existence until after the railroad was built and constructed.

"I have given in full above paragraphs 4, 5 and 6 of the complaint for three main reasons.  First, to show that plaintiff alleges *defendant* built the railroad and is responsible for the damages:  Second, to show that plaintiff claims it was the fact of blowing the bluff over into the natural channel of the river, while engaged in constructing the railroad, that interfered with and diverted the flow of the water, resulting in the damage complained of; and Third, to show that plaintiff neither claims nor alleges that the right of way or bed of the railroad in any manner whatever encroaches upon or interferes with the original channel of the river.

"As to the first, it is shown by a duly certified copy of the articles of incorporation admitted in evidence that this defendant was incorporated in the state of Oregon by articles signed and executed in triplicate Nov. 23, 1910, one of which was filed and recorded on the same day, with the secretary of state of Oregon and a duly certified copy thereof filed and recorded Nov. 28, 1910, in the office of the secretary of state of Washington.

"So that it is impossible that this company could have built the road in *1909*.

"Counsel for plaintiff argues, in effect, that this might have been a re-incorporation, as to which the pleadings and proof are silent, and as a matter of fact it is stated in the articles of incorporation that one of the purposes and objects of the incorporation is to purchase this very railroad from another corporation, to wit: '*Oregon and Washington Railroad Company*.'

"As to the second—the proof clearly shows that it was the blowing of the bluffs across and into the channel of the river that diverted the waters from their accustomed route and flow resulting in the damage suffered.

"And as to the third—there is not a particle of proof here that the railroad bed as constructed and used in any manner whatever encroaches upon or changes the old channel of the river.  Now, if the last named condition did exist, that is, if

the roadbed interfered with the old channel and diverted the waters to another's damage, the company so operating and using it would likely be liable under sec. 8737 R. & B. Code, which section, however, has no application to the facts in this case.

"It is true that the damages proven occurred in March, 1911, (after defendant took the road and prior to making the complaint) but they were not caused by anything this defendant had done. The testimony shows that plaintiffs have been very seriously damaged to the extent of several thousand dollars, and it is exceedingly unfortunate for them that, in the face of the notice given their attorneys by defendant's answer more than two years ago and that more than three years after the happening of the damages, the trial should take place discovering the fact that the wrong party has been sued, assuming my view to be right.

"I have examined the authorities cited by attorneys for plaintiffs and find they have nothing to do with this case. This is a plain case of having sued the wrong party. Because one has suffered a wrong or injury is no reason why he should have a remedy and satisfaction against any one other than the one who caused it.

"There may be findings and judgment in favor of defendant, and dismissed the action."

Thereafter findings of fact and conclusions of law were made and entered in conformity with the trial court's views. From a judgment entered thereon in favor of defendant, this appeal is taken.

Plaintiffs excepted to that part of the findings of fact numbered 3 which finds as follows: ". . . but that no part of said line of railway or roadbed, or the roadbed or right of way thereof, was constructed or maintained in the original bed of said river or encroached thereon." Plaintiffs further excepted to that part of the same finding which finds as follows:

". . . and that by reason of the blowing of said bluffs, rocks and debris out into the channel of said river, the water has been caused to leave its natural and customary channel during periods of high water, and by reason of said obstruc-

tions has been precipitated over and upon plaintiffs' land. That the persons, firms or corporations building and erecting the said railroad are not disclosed by the evidence herein, but that the defendant did not build or construct the said line of railroad or cause the same to be built or constructed, nor did any officers, agents or employees of the defendant cause the said line of railroad to be built or constructed, and that neither the defendant nor any person acting for it caused the obstructions in the channel of said river hereinabove mentioned to be blown into the said channel."

Plaintiffs further excepted to that portion of finding numbered 4 which finds as follows:

"That as a result and consequence of the obstructions having been placed in the channel of said river, as aforesaid, by the persons building the line of railroad, the plaintiffs' land has, at divers times since the year 1909 and prior to the beginning of this action, been overflowed and damaged, and portions of plaintiffs' crops have been destroyed and debris has been washed upon plaintiffs' land; that the said damage to plaintiffs' land and crops has been occasioned solely by the precipitating of the two obstructions or bluffs hereinabove referred to into the channel of the river, and has not resulted from the manner in which the roadbed and right of way of the railroad company was built or maintained along the line of said river; that a considerable part of the damages that have resulted to the plaintiffs by reason of the facts above set forth was occasioned during the spring of the year 1911."

Plaintiffs also objected to finding numbered 7, as follows:

"That the damages to plaintiffs' land have not resulted from any act of negligence of the defendant herein, or of any of its officers, agents, employees, contractors or other person or persons for whose acts it is responsible."

Plaintiffs also excepted to the conclusions of law made by the court in favor of the defendant, and proposed findings of fact to be found and entered by the court, which were refused.

The defendant introduced no evidence except the articles of incorporation under which it came into existence in the

state of Oregon in November, 1910, as the Oregon-Washington Railroad & Navigation Company, of Portland, Oregon. The purpose of its incorporation, as shown by its articles, was:

"To purchase, acquire, own, hold, construct, complete, equip, maintain and operate the railroads, railroad property and telegraph lines hereinafter mentioned, with their appurtenances, and to carry freight and passengers thereon, and to receive tolls for such carriage, and in all things, and in every lawful manner, to exercise the powers, privileges, franchises and functions of a railroad company and of a common carrier in respect to each and all of such lines, to wit:

. . .

"(15)   The constructed railroad and telegraph line now owned by Oregon and Washington Railroad Company from Centralia in the state of Washington to Hoquiam in said state . . . and any constructed railroad and telegraph lines now owned by Oregon and Washington Railroad Company on any part or parts . . . in the state of Washington."

It will thus be seen that the defendant sued and defending in this action was not in fact in existence in 1909 at the time of the construction of the railroad roadbed complained of by plaintiffs in their complaint. Plaintiffs, however, contend that the provisions of Rem. & Bal. Code, § 8737, rendered the defendant liable. That section is as follows:

"Every corporation formed under the laws of this state for the construction of railroads or canals shall possess the power to construct its railway or canal, as the case may be, across, along or upon any river, stream of water, watercourses, plank road, turnpike or canal, which the route of such railway or canal shall intersect or touch; but such corporation shall restore the river, stream, watercourse, plank road or turnpike thus intersected or touched to its former state as near as may be, and pay any damages caused by such construction."

It is urged that the case of *Lefurgy v. New York & N. R. Co.*, 50 Hun 606, 3 N. Y. Supp. 302, is identical with the case at bar, brought under the statute from which our statute is

copied, and that the court held that a change of ownership did not relieve the new owner from liability under the statute, not even when, as was the case, the road was built long before the defendant corporation was organized; and cite, to the same effect, the case of *Brown v. Cayuga & S. R. Co.*, 12 N. Y. 486. But it is evident, as stated by the learned trial judge, that the theory of the plaintiffs in the court below was that the blowing of the bluffs over into the natural channel of the river while engaged in constructing the railroad was the interference which diverted the flow of the water and resulted in the damage complained of. Plaintiffs did not allege nor claim that the right of way or bed of the railroad was maintained in the course or channel of the river, or in any manner whatever encroached upon or interfered with the original channel of the river. All their allegations, and their entire theory of action, were to the effect that they were entitled to damages occasioned by the past acts of some railroad company in blowing two bluffs off into the natural channel of the river while constructing the railroad. It is plainly shown that this defendant did not commit those acts. It is not a mere technicality nor an evasion. The fact that the name of the present defendant and that of the company from which it purchased its railroad are similar is of no avail. The defendant was in no way connected by the complaint with its predecessor, the Oregon and Washington Railroad Company, either as successor, vendee, or otherwise. If a private individual had owned land adjoining that of the plaintiffs, and had constructed a building thereon, and during such construction wrongfully thrown materials on the plaintiffs' premises, or into the river so as to divert the course of the river with more force against the plaintiffs' premises, thereby causing damage to their premises, and the adjoining owner thereafter sold the property with the constructed building thereon, plaintiffs certainly could not hold the new owner of the adjoining property liable for the damages occasioned by the former owner in the construction of his building; and

such, we think, is the situation here. Had the plaintiffs brought their action against defendant on the theory of the maintenance of its roadbed so as to constitute a nuisance in the stream, the Chehalis river, and a statutory liability therefor, under the provisions of § 8737, *supra*, different issues would have been presented and different evidence in part undoubtedly introduced, and possibly a different result might have been reached by the trial court. As the cause was brought, and under the issues presented, we agree with the trial court as stated in the memorandum decision and the findings, conclusions and judgment in the case.

Judgment affirmed.

MORRIS, C. J., PARKER, MOUNT, and MAIN, JJ., concur.